————o————

## No. 5866.

## PAUL CASTILLION, FOR THE USE OF HIS MINOR CHILD, vs. JOHN L. WALSTEN, ET AL.

### Syllabus.

Issues of fact only are involved herein.

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 99,884. Hon. G. H. Theard, Judge.

Formento, Teissier & Teissier, for plaintiff and appellant.

Carleton Hunt, for defendant and appellee.

His Honor, HORACE L. DUFOUR, rendered the opinion and decree of the Court as follows:

The plaintiff sues in tort for damages alleged to have been inflicted on his minor child by her eating of a cream puff given to her by the defendant as lagniappe for the purchase of a loaf of bread and which, it is charged, was, to the knowledge of the latter, negligently prepared, unfit for food and poisonous.

The defense is that the cream puff was good and well made and that the child's illness was caused by the gluttenous eating of other things.

. The surrounding circumstances do not tend to support the plaintiff's theory.

It is shown that several children living in the neighborhood of the confectionery—in the number, five of Mrs. Cyrus' ranging in age between seven and fifteen, and five of Mrs. Stretzringer's, between three and nine years of age, customers of the confectionery, had without injury eaten of cream puffs of the same bake as that which, it is claimed, injured the Castillion child.

No complaint other than that of the plaintiff was received about the cream puffs on that day.

. Dr. Metz, the eminent local chemist, who analyzed the Gumpert Puff Shell Filling, the standard preparation with which the puff is made and which is shown to have been the only material for making puffs in the establishment at the time, says in his certificate:

> "This matter as received does not contain anything deleterious or objectionable. It is apparently a mixture of sugar, starch, dry skimmed milk, protein matter (presumably dry eggs), flavoring matter and an infinitesimal trace of coloring matter."

The two young men who were in charge of the Charity Hospital Ambulance and who diagnosed the plaintiff's child's trouble as ptomaine poisoning were merely internes or resident students on an emergency call and were not physicians at the time. They did not see the case afterwards, and we do not find that any physician looked regularly after the patient.

. Dr. Rudolph, an expert presented by the plaintiff, states that it is not scientifically possible for two persons to eat food infected with ptomaine poison and for both of them not to be poisoned, and that, without knowing the history of a case, it is not an easy task to pronounce

between ptomaine poisoning and indigestion at the initial stage of the attack.

- If we accept as true the testimony of Mrs. Tallontta as to the meal which the plaintiff's child ate at her house on that day, it is not difficult to perceive how the young girl might have been attacked with acute indigestion.

A plentifully absorbed combination of macaroni, meat balls, Italian cheese, bananas and Italian wines though perhaps agreeable to certain tastes, will hardly commend itself for safe indulgence by the average person.

But even, if we disregard that evidence, the record does not show that the defendants are to blame or that the illness complained of was due to the eating of the cream puff.

The judgment in favor of defendants is correct.

Judgment affirmed.

Opinion and decree, June 12th, 1913.

Rehearing granted, July 21st, 1913.

Note by Reporter—(The original of the foregoing opinion is missing from the records of the Clerk of the Court of Appeal. The above is a verbatim copy of a purported certified copy of the original which the Clerk of the Court of Appeal sent back to the District Court.)

————o————